# Hines v. Willcox.

## (*Nashville.* February 4, 1896.)

1. EVIDENCE. *Parol admissible to prove independent agreement collateral to written contract, when.*

    In a suit by a tenant against his landlord, seeking to recover for personal injuries sustained by reason of the dangerous condition of the leased premises, averring both negligence and breach of contract on the part of the landlord in failing to put the premises in good and safe condition, it is error to exclude parol evidence tending to prove that the landlord, before the written lease was made, and as inducement thereto, promised to put the premises in good and safe condition, and at the time of its execution gave assurance that this had been done, there being in the written lease none of the landlord's undertakings, but only the tenant's, and nothing in conflict with this independent collateral agreement. (*Post, pp. 149–159.*)

    Cases cited: Bedford v. Flowers, 11 Hum., 242; Ellis v. Hamilton, 4 Sneed, 512; Bryan v. Hunt, 4 Sneed, 544; Price v. Allen, 9 Hum., 702; McLean v. State, 8 Heis., 22; Fields v. Stunston, 1 Cold., 40; Stewart v. Insurance Co., 9 Lea, 104; Weisinger v. Bank, 10 Lea, 330; Insurance Co. v. Mathews, 8 Lea, 508; Railroad v. Gammon, 5 Sneed, 571; Kearly v. Duncan, 1 Head, 400; Betts v. Demumbrune, Cooke, 48; Leineau v. Smart, 11 Hum., 308; Cobb v. Wallace, 5 Cold., 539; Lytle v. Bass, 7 Cold., 303; Vanleer v. Fain, 6 Hum., 104; Dick v. Martin, 7 Hum., 263; Mitchell v. Bank, 8 Hum., 216; Cobb v. Oneal, 2 Sneed, 438; Bissenger v. Guiteman, 6 Heis., 277; Hicks v. Smith, 4 Lea, 464; Smith v. O'Donnell, 8 Lea, 468; Hawkins v. Lee, 8 Lea, 42; Breeden v. Grigg, 8 Bax., 163; Waterbury v. Russell, 8 Bax., 162; Brady v. Isler, 9 Lea, 356; Barnard v. Roan Iron Co., 85 Tenn., 139; McFarlane v. Moore, 1 Overton, 174; Hogg v. Cardwell, 4 Sneed, 157; Richardson v. Thompson, 1 Hum., 154; 7 L. R. A., 33 and notes; 17 L. R. A., 270 and notes.

2. SAME. *Same.*

    Where there is any evidence tending to show that an independent parol agreement, collateral to the written contract, was

entered into by the parties, it is error to exclude such evidence and withdraw that issue of fact from the jury. (*Post, pp. 159, 160.*)

Cases cited and approved: Cobb v. Wallace, 5 Cold., 540; Stewart v. Insurance Co., 9 Lea, 104, 112.

3. LANDLORD AND TENANT. *Liability of landlord leasing dangerous premises.*

If a landlord lease premises which are, at the time, in a dangerous condition, he will be liable for damages that may result therefrom to his tenant, if he knew of such unsafe condition of the premises and concealed the fact, or if by reasonable care and diligence he could have known it, provided the tenant has exercised reasonable care and prudence for his own protection against the effects of his landlord's wrongful act. (*Post, pp. 160–162.*)

Cases cited and approved: Young v. Bransford, 12 Lea, 244; 5 N. E. Rep., 248; 44 Am. Rep., 499; 19 Am. Rep., 164; 50 Am. Dec., 780; 59 Am. Dec., 733; 67 Am. Dec., 404; 50 Am. Rep., 659; 105 Mass., 477; 12 Am. St. Rep., 778; 18 Am. St. Rep., 431; 15 Am. St. Rep., 199.

Cases cited and distinguished: Southern Oil Works v. Bickford, 14 Lea, 657; Banks v. White, 1 Sneed, 614.

---

## FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County.   J. W. BONNER, J.

H. PARKS, E. A. PRICE, J. W. GAINES for Hines.

R. T. SMITH, R. McP. SMITH for Willcox.

WILKES, J.   This is an action for damages for personal injuries sustained by the plaintiff while oc-

cupying the house of defendant as his tenant. The cause was heard before the Court and a jury, and there was a verdict for the defendant and judgment against plaintiff for costs, and she has appealed and assigned errors. The plaintiff, with several members of her family and boarders in the house, was injured by the falling of a defective and unsafe back porch.

There are two counts in the declaration, the first alleging, in substance, that defendant contracted that the house should be put in safe and tenantable condition before the rental contract was made, and that, at the time the contract was closed, the defendant's agent represented and stated that it had been put in a safe and tenantable condition, as had been previously promised and agreed. The second count alleges, in substance, that the house was in an unsafe and dangerous condition when plaintiff rented it from defendant, and that defendant and his agent knew of this fact and concealed it from her, and that it was not known to her.

The pleas were, in effect, a general denial of the truth of the matters alleged, not guilty, and contributory negligence. There was what is termed a rental contract, signed by the parties, in the words and figures following:

"NASHVILLE, September 28, 1892.

"A. V. S. Lindsley, agent, has this day rented to M. P. Hines and wife, Lucy S. Hines, the two-story dwelling house on the southwest corner of

Church and McLemore streets for one year from October 1, 1892, to October 1, 1893, for $50 per month, payable monthly, in advance. To secure payment of said sum, said M. P. Hines and wife have this day executed twelve notes, payable to A. V. S. Lindsley, agent, falling due, one October 1, 1892, and one on the first of each month thereafter till the twelve notes are paid. M. P. Hines and wife further agree and bind themselves to keep said premises clean and in a sanitary condition satisfactory to the city authorities. Should any of the above notes remain due and unpaid, A. V. S. Lindsley, agent, reserves the right to re-enter and take possession or to enter suit for collection of all notes unpaid. A. V. S. Lindsley, agent, also reserves the right to re-enter and take possession of said premises should M. P. Hines and wife fail to keep said property in a good sanitary condition.

"(Signed)  A. V. S. Lindsley, *Agent,*

"By J. T. Lindsley,

"M. P. Hines,

"L. S. Hines."

During the rental year M. P. Hines, the husband, died, and L. S. Hines, his widow, continued to occupy the premises under the same contract previously made with her and her husband, and the injuries occurred after his death.

The case has been most ably and elaborately argued on both sides, and a vast array of authorities have been collected and commented upon. We can

only notice the salient features, which must determine the decision of the case, leaving many others untouched.

The trial Judge excluded from the jury all evidence offered by plaintiff to show that defendant made any promise or agreement to put the premises in good and safe condition before the rent contract was signed, and all evidence as to statements made that the premises had been put in safe and tenantable condition at the time and contemporaneous with the signing. This is assigned as error. In excluding the evidence, the Court said it was done because—

"1. It goes to alter the terms of a written lease to plaintiff.

"2. It attempts to introduce a warranty of the condition of the premises at the time of the demise, when no such warranty is contained in the lease.

"3. Because the complaint made by plaintiff of the condition of the premises had no reference to the condition of the porch or its insecurity at or before the time the lease was executed, said complaint relating only to minor matters, such as the accumulation of dirt on the premises, the absence of glass from the windows, and the absence of grates from some of the fireplaces in the house. Witness has testified to nothing else.

"4. The promise alleged to have been made by defendant's agent to put the place in repair, or the representations that the place had been put in re-

pair, must be held to have reference only to the previous complaints made by the defendant."

The plaintiff excepted to the action of the Court. Taking up these grounds of exception to the trial Judge's action, we will examine them in the light of the facts of this case.

The general rule is that parol evidence is not admissible to contradict a written agreement, whether simple or by deed. *Bedford et al.* v. *Flowers*, 11 Hum., 242; *Ellis* v. *Hamilton*, 4 Sneed, 512; *Bryan* v. *Hunt*, 4 Sneed, 544; *Price* v. *Allen*, 9 Hum., 702; *McLean* v. *The State*, 8 Heis., 22; *Fields* v. *Stunston*, 1 Cold., 40; *Stewart* v. *Insurance Co.*, 9 Lea, 104; *Weisinger* v. *Bank*, 10 Lea, 330; *Insurance Co.* v. *Mathews*, 8 Lea, 508; *Railroad* v. *Gammon*, 5 Sneed, 571; *Kearly* v. *Duncan* 1 Head, 400.

But this rule does not apply in cases where the parol evidence in no way contradicts or alters the terms of the written contract, but tends to establish an independent or collateral agreement not in conflict with it. *Betts* v. *Demumbrune*, Cooke, 48; *Leineau* v. *Smart*, 11 Hum., 308; *Cobb* v. *Wallace*, 5 Cold., 539; *Lytle* v. *Bass*, 7 Cold., 303; *Stewart et al.* v. *Insurance Co.*, 9 Lea, 104; *Vanleer* v. *Fain*, 6 Hum., 104; *Ferguson* v. *Rafferty*, 6 L. R. A., 32, notes; *Durkin* v. *Cobleigh*, 17 L. R. A., 270, and notes.

Nor does it apply in cases where the original contract was verbal and entire, and a part only of

it was reduced to writing. 1 Greenl. on Ev., Sec. 284*a*, 15th Ed.; 1 Starkie on Ev., 267; *Vanleer* v. *Fain*, 6 Hum., 104; *Dick* v. *Martin*, 7 Hum., 263; *Mitchell* v. *Bank*, 8 Hum., 216; *Leineau* v. *Smart*, 11 Hum., 308; *Cobb* v. *Oneal*, 2 Sneed, 438; *Cobb* v. *Wallace*, 5 Cold., 539; *Bryan* v. *Hunt*, 4 Sneed, 543; *Lytle* v. *Bass*, 7 Cold., 303; *Bissenger* v. *Guiteman*, 6 Heis., 277; *Hicks* v. *Smith*, 4 Lea, 464; *Smith* v. *O'Donnell*, 8 Lea, 468; *Hawkins* v. *Lee*, 8 Lea, 42; *Breeden* v. *Grigg*, 8 Bax., 163; *Waterbury* v. *Russell*, 8 Bax., 162; *Brady* v. *Isler*, 9 Lea, 356; *Barnard* v. *Roan Iron Co.*, 1 Pick., 139.

Parol evidence is admissible as to collateral matters not varying the terms of the writing, such as fraud in the soundness of an article, when the written warranty extends only to title. *McFarlane* v. *Moore*, 1 Overton, 174; *Lytle & Patterson* v. *Bass*, 7 Cold., 303. Or when fraudulent representations were made in negotiating the contract. *Barnard* v. *Roan Iron Co.*, 1 Pick., 139. Or when representations and statements are made as inducements to the contract, and form the basis or consideration of it. *Waterbury* v. *Russell*, 8 Bax., 162; *Hogg* v. *Cardwell*, 4 Sneed, 157.

In *Betts* v. *Demumbrane*, Cooke, 48, the written contract was for the rent of a tavern. It was permitted to be shown by parol that the landlord agreed to erect a kitchen on the ground, that this was an inducement to rent the tavern, and only part of the contract was in writing.

In *Vanleer* v. *Fain*, 6 Hum., 104, it was held that in a written contract for the hire of a slave, parol evidence could be introduced to show that one of the terms of the hiring was that the slave should not be removed out of the county.

In *Leineau* v. *Smart*, 11 Hum., 308, there was a written contract for the sale of a tavern. It was permitted to show by parol, as part of the same agreement and inducement to it, that the vendor would close up another tavern he owned in the same town.

In *Dick* v. *Martin*, 7 Hum., 263, parol evidence was allowed to prove an agreement to waive demand and notice of negotiable paper, although made at the time of the indorsement, which was full and dated.

In *Mitchell* v. *Bank*, 8 Hum., 216, it was permitted to be shown by parol that the cashier of a bank informed the directors that one of the makers had promised the indorser's name on the note, the evidence being treated as part of the *res gestæ*.

In *Cobb* v. *Oneal*, 2 Sneed, 439, there was a written warranty of the soundness of a slave. It was permitted to show by parol that the vendee agreed to look to a third person, and not to the warrantor, in case of a breach, in consideration of an abatement in price.

In *Bryan* v. *Hunt*, 4 Sneed, 543, it was held that the general rule, excluding parol evidence, has no application to agreements made subsequent to the execution of the written contract.

In *Cobb* v. *Wallace*, 5 Cold., 539, there was a written contract for the hire of a coal barge. It was allowed to prove by parol that it was hired for one particular purpose and trip only, and the question whether the writing embraced the whole contract was for the jury.

In *Lytle* v. *Bass*, 7 Cold., 303, a note was given for a sawmill. It was permitted to show, as a separate collateral, substantive agreement that the vendor warranted the sawmill.

In *Bissinger* v. *Guiteman*, 6 Heis., 277, it was held that it was competent to show by parol that at the time a promissory note was executed, it was agreed it should be held for nothing on the happening of a specific condition.

In *Hicks* v. *Smith*, 4 Lea, 463, there was a mortgage, and it was permitted to show by parol that Thomas should have priority when it was satisfied, though the mortgage did not so provide.

In *Hawkins* v. *Lee*, 8 Lea, 42, it was allowed to add terms to a written contract by parol, to the effect that plaintiff was to work at a particular place, and not remove his tools therefrom, and other conditions.

In *Smith* v. *O'Donnell*, 8 Lea, 468, it was held that a contract might be part in writing and part in parol, and in such case parol evidence was admissible.

In *Breeden* v. *Grigg*, 8 Bax., 163, it was held

that parol evidence is admissible to prove conditions upon which a written contract was made.

In *Waterbury* v. *Russell*, 8 Bax., 162, there was a sale of corn contract in writing. It was permitted to be shown by parol that the corn was represented to be sound as an inducement to the written contract.

In *Brady* v. *Isler*, 9 Lea, 357, it was held that parol proof may be allowed to show whether a written contract was in fact made, or whether it was to take effect only on certain conditions.

In *Barnard* v. *Roan Iron Co.*, 85 Tenn., it was held that, in a proceeding by a vendor to rescind a contract for the sale of land, on the ground of fraud, parol evidence of the fraudulent representations of the vendee, made in negotiating the contract, is admissible, the purpose being to show that the vendor was entrapped into an agreement that he otherwise would not have made.

The general rule, as well as the different cases in which it does not so apply as to exclude parol evidence, is forcibly stated and fully commented on in *Ferguson* v. *Rafferty*, 7 L. R. A., 33 and notes; *Durkin* v. *Cobleigh*, 17 L. R. A., 270 and notes.

It must be admitted that, in the multitude of exceptions to the general rule, much confusion has arisen, not only in our State, but elsewhere, so that the exact limit to be placed upon the exceptions depends not only upon the peculiar facts of each case, but also, to some extent, upon the peculiar

cast of thought of the individuals composing the Court, as is substantially said in *Richardson* v. *Thompson*, 1 Hum., 154.

Nevertheless, the exceptions are as well sustained and based upon authority as is the general rule, and there remains only the application of the rule and its exceptions to each case as it arises. Looking to the case as presented in this record, it is evident, at a glance, that the written contract set out only relates to the obligation and undertaking imposed upon the tenant, and it makes not the remotest reference to any act to be done or obligation assumed or representation made by the landlord, so that if the landlord agreed to do anything to the premises to make them safe, or represented that he had made them safe, which induced the plaintiff to make the contract, or which was to be a part of the contract, it was not embraced in the writing. Indeed, the record shows that not all the requirements made of the tenant are embraced, for the parol evidence, as well as the note filed, shows that it was one of the vital terms of the contract that Mrs. Hines should bind her separate estate for the payment of the notes, and that she did attempt to do so in the notes. This was an independent collateral agreement to the contract of rental, and an inducement to make it not embraced in the lease contract which was written.

We are of opinion it was error to exclude evidence tending to show that the defendant agreed to

put the premises in safe condition, if such were made before the contract was closed, and also evidence tending to show that, at the time the contract was signed, defendant or his agent represented that they had been put in a safe condition, as promised. The learned trial Judge, however, excluded the evidence also upon another ground, and that was because, in his opinion, the evidence offered did not go to the extent of setting up a distinct collateral agreement to make the premises safe, or an assurance that they had been made safe, but that the evidence only went to show complaints about the sanitary condition of the premises and promises in regard to the grates and windows and other minor details, and assurances only as to them. The most material evidence upon this question is that of plaintiff, which is somewhat indefinite. She does not, in her evidence, mention the porch, and does refer to the windows and grates and general sanitary condition of the premises; but she also says that the promise was to put the house in good repair— safe repair.

The question as to whether the entire contract was reduced to writing, or an independent collateral agreement was made, was a question of fact, and where there was any evidence to sustain the contention, it was a matter for the jury to determine, and not for the Court. *Cobb* v. *Wallace*, 5 Col., 540; *Stewart* v. *Insurance Co.*, 9 Lea, 104, 112. We think it was, therefore, error in the trial Judge

to determine these questions and exclude all evidence in regard to them.

The Court charged the jury, among other things, substantially, that if the landlord knew the unsafe condition of the premises, and concealed the fact from the tenant, and that she did not know of their unsafe condition, or could not have known by the exercise of proper care and diligence, then she could recover, etc.

It will be noted that the learned trial Judge, in this charge, makes the tenant responsible not only for the facts known to her, but also such as she could have known by the exercise of proper care and diligence; but he only holds the landlord responsible for his actual knowledge, not for such knowledge as he might have had by the exercise of proper care and diligence.

We think the great weight of authority is that, if a landlord lease premises which are, at the time, in an unsafe and dangerous condition, he will be liable to his tenant for damages that may result, if he knows the fact and conceals it, or if, by reasonable care and diligence, he could have known of such dangerous and unsafe condition, provided reasonable care and diligence is exercised by the tenant on his part. Taylor on Landlord and Tenant, Sec. 175 (7th Ed.); Wood's Landlord and Tenant, Vol. 2, p. 854, and note; Sherman & Redfield on Negligence, Secs. 709, 711; *Cowan* v. *Sunderland*, 5 N. E. Rep., 248; *Coke* v. *Guthkese* (80 Ky.), 44

Hines *v.* Willcox.

Am. Rep., 499; *Cæsar* v. *Karutz* (60 N. Y., 229), 19 Am. Rep., 164; *City of Lowell* v. *Spaulding*, 50 Am. Dec., 780, note; Woodfall on Landlord and Tenant, 12 Ed., 707; *Godley* v. *Hogarty*, 20 Pa. St., 387 (59 Am. Dec., 733); *Carson* v. *Godley*, 26 Pa. St., 111 (67 Am. Dec., 404); *Edwards* v. *N. Y. & H. R. R. R. Co.*, 98 N. Y., 249 (50 Am. Rep., 659); *Gill* v. *Middleton*, 105 Mass., 477. The same principle is held in our own case of *Young* v. *Bransford*, 12 Lea, 244, citing 1 Thompson on Negligence, 317; Wharton on Negligence, Secs. 817, 845. See, also, *Timlin* v. *Standard Oil Co.*, 22 Am. St. Rep., —; *Ahern* v. *Steele*, 12 Am. St. Rep., 778; *Maynone* v. *Logan*, 18 Am. St. Rep., 431; *Lindsay* v. *Leighton*, 15 Am. St. Rep., 199; 12 Am. & Eng. Enc. L., pp. 687, 691, note.

This is not in conflict with the general rule that, in the absence of any stipulation or statement, there is no warranty that the premises are in a habitable condition, and no obligation to repair, as held in *Southern Oil Works* v. *Bickford*, 14 Lea, 657, and *Banks* v. *White*, 1 Sneed 614, but the cases proceed upon the idea that the premises, when leased, are unsafe, and that fact is known to the landlord, and concealed by him from the tenant, or might have been known by him by the exercise of reasonable care and diligence. The liability does not arise upon any question of contract, but upon the obligation to the tenant not to expose him to danger of which the landlord knows, or could know by

11—12 P

reasonable care, nor is it done away with by the fact that the parties examined the premises, and the tenant did not discover the defect if he exercised reasonable diligence. This view of the case was presented in the second count of plaintiff's declaration. Upon this feature of the case, the learned trial Judge charged the jury, among other things: "If the plaintiff had any right to recover, her right must depend upon what took place after the plaintiff took possession of the premises and before the accident occurred."

Without going further into the case, and without commenting on the vast array of authorities presented by the defendants' attorneys in support of the trial Judge's positions, some of which are in conflict with the views herein given, we think the judgment of the Court below must be reversed, and the cause remanded for a new trial. Appellee will pay costs of appeal.